**RONALD J. TENPAS**
Acting Assistant Attorney General
Environment and Natural Resources Division
**THOMAS ZIA**
thomas.zia@usdoj.gov
**KATHRYN E. BENZ**
kathryn.benz@usdoj.gov
Trial Attorneys
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663
Telephone:  (202) 305-0430 (Zia) / 305-0245 (Benz)
Facsimile:  (202) 305-0506
**WILLIAM W. MERCER**
United States Attorney
**LEIF JOHNSON**
Chief, Civil Division
leif.johnson@usdoj.gov
2929 3rd Avenue N.
Billings, MT 59102
Telephone:  (406) 657-6101
*Attorneys for Federal Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | | |
|---|---|---|
| **MONTANA WILDERNESS** | ) | Civil No. 07-39-M-DWM |
| **ASSOCIATION,** *et al.*, | ) | Consolidated with |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| **KATHLEEN McALLISTER,** *et al.*, | ) | |
| | ) | |
| Federal Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **TREASURE STATE ALLIANCE**, *et al.*, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
| _____ | ) | |

|                                              |     |                                                    |
|----------------------------------------------|-----|----------------------------------------------------|
|                                              | )   | Civil No. 1:07-59-BLG-RFC                          |
| **CITIZENS FOR BALANCED**                    | )   |                                                    |
| **USE**, *et al.*,                           | )   |                                                    |
|                                              | )   | **FEDERAL DEFENDANTS'**                            |
| Plaintiffs                                   | )   | **RESPONSE IN OPPOSITION TO**                      |
|                                              | )   | **CITIZENS FOR BALANCED USE'S**                    |
|                                              | )   | **MOTION FOR PRELIMINARY**                         |
| v.                                           | )   | **INJUNCTION**                                     |
|                                              | )   |                                                    |
| **REBECCA HEATH**, *et al.*,                 | )   |                                                    |
|                                              | )   |                                                    |
| Federal Defendants.                          | )   |                                                    |
|                                              | )   |                                                    |

Federal Defendants, by and through undersigned counsel, hereby respond in opposition to Plaintiffs Citizens for Balanced Use, Kenneth Zahn, Gallatin Valley Snowmobile Association and the Big Sky Snowriders' Motion for a Preliminary Injunction (Doc. No. 31) (hereinafter "PI Motion") as follows:

## INTRODUCTION

On October 16, 2007, Plaintiffs filed their PI Motion.  Plaintiffs' proposed injunction has three prongs.  First, Plaintiffs request that this Court enjoin the U.S. Department of Agriculture, Forest Service ("Forest Service" or the "Agency") from implementing the Travel Plan utilizing the Motorized Vehicle Use Maps ("MVU Maps") issued on October 8, 2007.  Plfs.' PI Br. at 2.  Second, Plaintiffs ask this Court to enjoin the Forest Service from publishing the Over-Snow Vehicle Use Map ("Winter Map"), and any subsequent motorized maps, "so long as they are of the same format, detail and quality as the published Motor Vehicle Use Map."  Id.  Finally, Plaintiffs ask this Court to issue a mandate requiring the Forest Service to publish a "more detailed and quality map correcting the deficiencies identified in these maps and matching the quality of the maps previously published by [Gallatin National Forest ("GNF")] for forest visitor use."  Id.  Plaintiffs acknowledge that their motion is "independent of the claims" in their pending lawsuit, which challenges the sufficiency of the GNF Travel Plan Record of Decision ("Travel Plan ROD") under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., and the National Forest Management Act ("NFMA"), 16 U.S.C. § 1600 et seq.  Plfs.' PI Br. at 7.  Federal Defendants submit that Plaintiffs' PI Motion must be denied on several grounds.  First, Plaintiffs attempt to prosecute an entirely new claim by way of a preliminary injunction, as opposed to amending their Complaint or bringing a new lawsuit, is procedurally improper.  A preliminary injunction is intended to preserve

the status quo of the parties' interests pending a full adjudication on the merits—not to serve as an adjudication of the merits.  Second, even if Plaintiffs were to amend their Complaint or bring a new lawsuit with claims to support their PI motion, such claims would have to be dismissed because the challenged map does not constitute a final agency action, Plaintiffs' lack standing, and their claims are not ripe.  Finally, Plaintiffs' PI Motion should be denied because they have failed to establish a likelihood of success on the merits, or a serious question for litigation, and the balance of harms in this case weighs in favor of denying the motion.  The challenged maps are proper for their intended purpose and Plaintiffs' attempt to force the Forest Service to create maps that are identical to the Forest Visitor Use Maps is improper, wasteful, and required by no law or regulation.  For these reasons, Defendants request that this Court deny Plaintiffs' PI Motion.

## STATEMENT OF FACTS

On December 18, 2006, the Forest Service published the Travel Plan ROD.  See Travel Plan ROD at 140 (Plaintiffs' Exhibit 14).  Implementation of the Travel Plan did not occur with the publication of the Travel Plan ROD.  Id.  Rather, the Agency anticipated that the Travel Plan's implementation would occur over ten to fifteen years, Plaintiffs' Exhibit 1 at 4, and involve three phases.  See Gallatin National Forest Travel Management Plan, Implementation Strategy (Attached as Defendants' Exhibit 1).[1]  Phase 1 of implementation includes "executing Forest orders that implement permanent and short-term closures, creating user information such as maps and user guides that show opportunities and prohibitions, and installing travel management signing." Id.  See

---

[1] Phase 1 involves immediate changes to the forest transportation system, Phase 2 involves short-term changes to the forest transportation system, and Phase 3 involves long-term changes to the forest transportation system.  Id. at 1.

also Plaintiffs' Exhibit 14 (Travel Plan ROD) at 140.  In turn, the Agency anticipated that

> [p]roduction of maps or user guides, or brochures will be implemented in two stages.  Stage 1 will be the production of an inexpensive interim map showing non-motorized prohibitions described by the Forest Orders and motorized opportunities on the Motor Vehicle Use Map (MVUM) and the Over-snow Motor Vehicle Use Map.  These will be available to the public on some inexpensive media free of charge . . . Stage 2 would follow with a new Forest visitor map and/or user guides printed on durable media which would be available for a fee as the Visitor map is currently.

See Defendants' Exhibit 1.

The first of the motorized use maps, the MVU Maps, were released on October 8, 2007.[2] Plaintiffs' Exhibit 3.  The MVU Maps comply with national direction standardizing the design and format of these types of maps.  See 36 C.F.R. § 212 et seq.  The motorized maps will be updated yearly.  Declaration of Kimberly Schlenker ("Schlenker Decl.") at ¶¶4A, 4B.

It is a visitor's responsibility to know which roads and trails are open and for what use and when, and the motorized use maps identify these routes.  Plaintiff's Exhibit 1 at 1.  However, during Phase 1 of implementation, Agency officials will emphasize informational opportunities to educate users of travel management changes on the GNF.  Schlenker Decl. at ¶¶5, 6.  See also Defendants' Exhibit 1 at 8.  The Agency is also updating road, trail route markers and destination signs in the field which will "assist visitors in understanding which roads or trails are open to specific uses." Plaintiffs' Exhibit 3.

---

[2] Three MVU Maps, which cover different parts of the GNF, have been issued.  The first map covers the Absaroka-Beartooth Mountain Range, the second map covers the Bridgers/Crazies Mountain Range, and the third map covers the Gallatin-Madison Mountain Range.  See Plaintiffs' Exhibit 5-7.

The MVU Map designations are legally enforceable.  See 36 C.F.R. § 261.13.[3]  While the maximum penalty for a motorized vehicle violation is a $5000 fine or 6 months in jail; the "typical bond for a summer motorized vehicle violation in the state of Montana is $200.00."  Plaintiffs' Exhibit 1 at 3.  During the early stages of the Travel Plan's implementation it will "be up to Law Enforcement discretion and will be incident specific as to whether or not to provide warnings or issue violation notices."  Id.

### STANDARD OF REVIEW

Preliminary injunctions are exceptional and drastic remedies, and hence, Plaintiffs bear a heavy burden that such relief should be granted.  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).  "An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'"  Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982) (citation omitted).

The Ninth Circuit recognizes two sets of criteria for preliminary injunctive relief.  Under the "traditional" test, a plaintiff must demonstrate "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)."  Johnson v. Cal. State Bd. Of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995).  Under the "sliding scale" test, a party must demonstrate either "(1) a likelihood of success on the merits and a possibility of irreparable injury, or (2) the existence of serious questions on the merits and a balance

---

[3]  The regulation at 36 C.F.R. § 261.13 states: "It is prohibited to possess or operate a motor vehicle on National Forest System lands [on the GNF] other than in accordance with those designations."

of hardships tipping in its favor." <u>Fund for Animals v. Lujan</u>, 962 F.2d 1391, 1400 (9th Cir. 1992) (citation omitted).  "These two tests are not separate but represent a sliding scale in which the required probability of success on the merits decreases as the degree of harm increases." <u>Westlands Water Dist. v. NRDC</u>, 43 F.3d 457, 459 (9th Cir. 1994).  Additionally, if the public interest is involved, a court must determine whether the balance of public interests supports the issuance or denial of an injunction.  <u>Caribbean Marine Services v. Baldrige</u>, 844 F.2d 668, 674 (9th Cir. 1988).

## ARGUMENT

**I.      Plaintiffs' PI Motion Must Be Denied Because of Fundamental Procedural Flaws**.

Plaintiffs' PI Motion must be denied because Plaintiffs' claims regarding the MVU Maps are not properly before this Court.  Plaintiffs acknowledge that the claims which form the basis for their motion are "independent of the claims" in their pending lawsuit.  Plfs.' PI Br. at 7.  However, rather than amending their Complaint to include the current challenge to the implementation of the Travel Plan, Plaintiffs instead attempt to adjudicate the merits of the new claims in a motion seeking *extraordinary* and *preliminary* injunctive relief.  Plaintiffs' attempts to circumvent the legal requirements for seeking judicial review should be rejected without addressing the merits of their PI Motion.

In an attempt to side-step the requirement to link the claims in their Complaint to their PI Motion, Plaintiffs argue that this Court need not consider the merits at all under the "alternate rule" described in <u>Earth Island Institute v. U. S. Forest Serv.</u>, 351 F.3d 1291 (9th Cir. 2003).  Plfs.' PI Br. at 7.  Plaintiffs argue that <u>Earth Island</u>, and a pair of thirty-year-old prisoner rights cases from the districts of Massachusetts and New York, authorize this Court to adjudicate the merits of a claim

by way of a motion for preliminary injunction.[4]   However, Plaintiffs' novel argument is based on a misstated and incomplete citation of <u>Earth Island</u>, and runs contrary to Ninth Circuit case law which specifically prohibits the type of adjudication by preliminary injunction that Plaintiffs attempt here.

<u>Earth Island</u>'s alternative preliminary injunction standard provides that a movant must establish "*either* a combination of probable success on the merits and the possibility of irreparable injury, *or* that serious questions are raised and the balance of hardships tips sharply in [its] favor." Plfs.' PI Br. at 7 (citing <u>Earth Island</u> at 1298).   Plaintiffs argue that the term "or" in that provision establishes a clear division between the two tests and enables this Court to consider likelihood of success on the merits or hardship, but not necessarily both.   Incredibly, Plaintiffs fail to cite the very

---

[4] Plaintiffs' reliance on non-binding Massachusetts and New York district court cases to argue that a preliminary injunction motion may stand alone is not persuasive in light of the unique facts of the two cases.   In <u>Marsh v. Moore</u>, 325 F. Supp. 392, 393 (D.C. Mass. 1971), a prisoner sought to enjoin prison officials from opening correspondence between him and his counsel in a lawsuit against the prison.   Citing constitutional rights to free speech and access to the courts, the court placed some limitations on how the prison handled the prisoner's correspondence with his attorney.   <u>Id</u>. at 395-96.   However, unlike the claims here, <u>Marsh</u> involved allegations that a party's actions were hindering pending litigation before the court because they were preventing the prisoner and attorney from freely and openly communicating about the pending litigation.   It is a basic and undisputed rule of procedural law that a court has substantial discretion to impose restrictions on the parties to protect the integrity of a legal proceeding before it.   See <u>O'Neill v. United States</u>, 50 F.3d 677, 687 (9th Cir. 1995) ("[D]istrict courts are entitled to discretion in managing cases within the Federal System").   There was nothing unusual or noteworthy about the Court exercising that broad discretion in <u>Marsh</u> and there is nothing in Plaintiffs' PI Motion that establishes a basis to exercise that discretion in this case.

   There is also nothing remarkable or helpful to Plaintiffs in the holding of <u>United States ex rel. Wolfish v. Levi</u>, 406 F. Supp. 1243 (D.C.N.Y. 1976).   There, the court simply granted a prisoner's motion for a preliminary injunction to allow extended visiting hours.   <u>Id</u>. at 1250.   Unlike in the case at bar, the issue of extended visiting hours was included in the prisoner's pending litigation and the court did consider whether the prisoner's claims in his complaint raised a serious question requiring litigation.   <u>Id</u>.

next sentence in <u>Earth Island</u>, which gives the preceding provision necessary context and undermines Plaintiffs' suggested interpretation of the alternative preliminary injunction standard as two unrelated rules.  The next two sentences in <u>Earth Island</u> state that the standard and alternative tests are "'extremes of a *single continuum*,' *rather than two separate tests*.  Thus, the greater the relative hardship to the party seeking the preliminary injunction, the less probability of success must be shown."  <u>Earth Island</u>, 351 F.3d at 1298 (internal citations omitted) (emphasis added).  As explained by the court in <u>Earth Island</u>, the alternate test is not intended to divorce the underlying complaint from a preliminary injunction motion, but is one end of a single continuum representing the long-established rule that when a movant's hardships are great, the burden to establish a "likelihood of success on the merits" is diminished, but not eliminated.  <u>Id.</u>  <u>See also</u> <u>Lands Council v. McNair</u>, 494 F.3d 771, 775 (9th Cir. 2007).  Therefore, even in situations where a party invokes the alternate test, a party must still demonstrate "a fair chance of success on the merits" or that their claims raise "questions serious enough to require litigation."   <u>Sports Form, Inc. v. United Press Int'l, Inc.</u>, 686 F.2d 750, 753 (9th Cir. 1982) (holding that at an "irreducible minimum," a "moving party [must] demonstrate a fair chance of success on the merits or questions serious enough to require litigation. No chance of success at all will not suffice").  Contrary to Plaintiffs' assertions, Plaintiffs must still show that the merits of their underlying claims are linked to the request for a preliminary injunction because, at a minimum, they must establish that their claims raise a "serious question."  Plaintiffs' PI motion must be denied because it fails to establish an essential criterion needed to justify injunctive relief.

Plaintiffs' attempt to obtain a preliminary injunction on claims not raised in their Complaint also runs counter to the basic purpose of a preliminary injunction because this attempt—if

successful—would turn the preliminary injunction into a permanent injunction.  The Ninth Circuit

has held that "[a] preliminary injunction is not a preliminary adjudication on the merits, but a device

for preserving the status quo and preventing the irreparable loss of rights before judgment."  Textile

Unlimited, Inc. v. A..BMH and Co., Inc., 240 F.3d 781, 786 (9th Cir. 2001) (citations omitted).  In

other words, a preliminary injunction, as its name implies, is intended to be a limited form of

equitable relief that simply freezes the parties' relative interests until the court has a full opportunity

to address the merits of a claim.  In this case, without an underlying Complaint asserting the claims

contained in the PI Motion, there is no procedural mechanism by which this Court will be able to

consider those claims on the merits.  Therefore, the preliminary injunction will effectively serve as

a permanent injunction, a result that is prohibited by Ninth Circuit law.[5]  See Tanner v. Motor

Livery, LTD. v. Avis, Inc., 316 F.2d 804, 809 (9th Cir. 1963) (holding that the granting of a

preliminary injunction giving plaintiffs substantially all injunctive relief that they could have

obtained after trial on merits was abuse of discretion).[6]

## II.     This Court is Without Jurisdiction Over Plaintiffs' Claims for Relief Because Plaintiffs Have Failed To Satisfy Jurisdictional Requirements.

Even if this Court allows Plaintiffs to proceed without requiring them to amend their

Complaint or file a new Complaint challenging implementation of the Travel Plan, Plaintiffs' PI

---

[5] The injunction would endure even if Federal Defendants prevail on the merits of Plaintiffs'
challenge to the Travel Plan ROD because the injunction is not linked to the merits of Plaintiffs'
Complaint but rather based on Plaintiffs' separate claim that the post-ROD implementation maps
are inadequate.  Plaintiffs seek an injunction of an indefinite term governing "future maps."
Plfs.' PI Br. at 17.  Presumably, these "future maps" would be subject to this Court's injunction
if the Court were to grant Plaintiffs' motion.

[6] Both the Marsh and U.S. ex rel. Wolfish cases relied on by Plaintiffs involve situations where
the preliminary injunctions would lift if the government were the prevailing party in a trial on the
merits.  See supra, pg. 7, n.5.

Motion must be denied because this Court lacks jurisdiction to hear Plaintiffs' claims.  It is a threshold requirement for judicial review under the Administrative Procedure Act ("APA") that a plaintiff must have standing, that plaintiff's claims must be ripe, and that plaintiff's complaint must identify a final agency action that represents the consummation of the Agency's decision-making process.  See generally Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 882 (1990), Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) ("Defenders").  Plaintiffs' PI Motion fails to satisfy these jurisdictional requirements.

### A.    Plaintiffs' Preliminary Injunction Motion Fails to Identify a Reviewable Final Agency Action as Required by the APA.

Plaintiffs' claims are brought under the APA, 5 U.S.C. § 706; see Plfs.' PI Br. at 6.   The APA waiver of sovereign immunity does not expose the Government to broadside attacks on agency policies or programs but is rather limited to review of a "final agency action for which there is no other adequate remedy."  5 U.S.C. § 704.  Two conditions must be met to constitute a final agency action, "'[f]irst, the action must mark the 'consummation' of the agency's decisionmaking process. . . . [a]nd second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  Mobil Exploration & Producing U.S., Inc. v. U.S. Dep't of Interior, 180 F.3d 1192, 1197 (10th Cir. 1999) (quoting Bennet v. Spear, 520 U.S. 154, 177-178 (1997)).

Here, Plaintiffs' PI Motion does not seek to enjoin any specific agency action that represents the consummation of the Forest Service's decision-making process.  This Court has previously recognized that the "[f]inal EIS and a Record of Decision are final agency actions." Mont. Snowmobile Ass'n. v. Wildes, 103 F. Supp. 2d 1239, 1241-1242 (D. Mont. 2000) (citing Or. Natural Res. Council v. Harrell, 52 F.3d 1499, 1503 (9th Cir. 1995)).  However, here, Plaintiffs admit that

this motion "does not arise from the merits" of their case-in-chief which challenges the sufficiency of the Travel Plan ROD.  Plfs.' PI Br. at 7.  Plaintiffs limit their PI Motion to asking this Court to enjoin the Agency from "implementing the Travel Plan using the published MVU Map and subsequent maps in the same format."  Id. at 6.  Plaintiffs' challenge runs aground on the fact that the issuance of the MVU Map to implement the Travel Plan does not constitute a final agency action.

In fact, Plaintiffs have pled their case in a manner closely akin to that followed by the plaintiffs in Mont. Snowmobile Ass'n., 103 F. Supp. 2d at 1239.  There, the plaintiffs brought an action challenging the Forest Service's closing of areas of the national forest to snowmobile use in accordance with the Forest Plan.  In their briefs, plaintiffs Montana Snowmobile Association noted that they were not challenging the "planning, procedures, or decision actually made with respect to the areas in the Forest Plan."  Id. at 1242.  Rather plaintiffs claimed that they were challenging "the 'site-specific decision' to close the areas to snowmobile use," id., which they argued was made in a letter from the National Forest Supervisor restating the Forest Plan's determination that certain areas were closed to motorized use.[7]  Id.  The court rejected plaintiffs' argument, holding that "it was the adoption of the Forest Plan at the conclusion of the EIS process of 1986 and not the December 1998 Letter that constituted the final agency action on motorized use in the areas."  Id. at 1242.  The court further held that the "[l]etter is an implementation of the standards governing

---

[7] Plaintiffs also argued that the map depictions represented "decisions" by the Forest Service concerning land use.  Id.  The court rejected the argument, noting that the Forest Service Manual stated that "the map itself is not a decision document, but rather a display of specific decisions made elsewhere based on analysis and public participation.  Travel management direction for off-road vehicles and other modes of transportation shall be in accordance with Forest Plan direction."  Id. (internal citations omitted).

management of the areas." Id. at 1242.[8]  Likewise, here the decision governing travel on the GNF were established in the Travel Plan ROD, and the issuance of the MVU Maps is merely a ministerial act that implements and triggers enforcement of "the decisions made in [] [the] travel management plan."  See Travel Plan Final Environmental Impact Statement at 3-161.  (Excerpts Attached as Defendants' Exhibit 2.)  Thus, as in Mont. Snowmobile Ass'n., Plaintiffs' challenge here to the sufficiency of the maps to be utilized for Travel Plan implementation is not a recognized final agency action subject to judicial review.[9]  Absent identifying a discrete agency action, this Court should not afford Plaintiffs relief from implementation of the Travel Plan where the ordinary jurisdictional prerequisites have not been met.

A closer reading of Plaintiffs' motion reveals that what Plaintiffs have really taken issue with is the design of the MVU Maps themselves, and they are asking this Court to prescribe an impermissible antidote.  See Nat'l Wildlife Fed'n, 497 U.S. at 891 (rejecting efforts to seek "wholesale improvement" of an agency's actions through a single suit that failed to identify the specific final agency action sought to be improved).  Indeed, Plaintiffs argue that the Agency has

---

[8] See also Shawnee Trail Conservancy v. Nicholas, 343 F. Supp. 2d 687, 708 (S.D. Ill. 2004) (holding that Forest Service's marking the boundaries of restricted natural areas, recording of the position of the markings and recalculation of acreage figures did not constitute final agency action subject to review where such actions are "simply an implementation of the 1992 [Forest] Plan, as opposed to a final action in contravention of the 1992 Plan that was the culmination of a decisionmaking process").

[9] See also Or. Natural Desert Ass'n v. U.S. Forest Serv., 465 F.3d 977, 986 n.12 (9th Cir. 2006), aff'g Mont. Wilderness Ass'n v. U.S. Forest Serv., 314 F.3d 1146, 1150 (9th Cir. 2003) (holding that trail maintenance  activities implemented in accordance with Forest Plan did not constitute final agency action for purposes of judicial review; "the maintenance of trails designated by those plans [was] merely an interim aspect of the planning process, not the consummation of it"), vacated on other grounds, Norton v. S. Utah Wilderness Alliance ("SUWA"), 542 U.S. 55 (2004).

"produced an inferior map product," one that is allegedly poorer in quality than previously produced, Plfs.' PI Br. at 10, 13, and criticize maps that have *yet to be produced*. Id. at 5-6. Plaintiffs then ask this Court to endorse their demand that the Forest Service produce motorized maps that are of a particular quality and type, rather than letting the Agency determine how best to proceed with implementing the Travel Plan. This type of claim does not challenge a discrete final agency action but is simply a thinly veiled attempt to complain about the Agency's overall program management. See Nat'l Wildlife Fed'n, 497 U.S. at 891-899 (holding that a plaintiff proceeding under the APA "cannot demand a general judicial review of the [agency's] day-to-day operations" simply by claiming that these operations are characterized by an alleged failure to abide by statutes or regulations).[10] While the public participated in the Travel Plan's NEPA process, it is the Agency's role to use its expertise in determining the best way to implement the provisions of the Travel Plan ROD on a day-to-day basis. Therefore, this Court should not grant Plaintiffs' request for relief.

**B.    The Injunction Plaintiffs Seek Would Afford Plaintiffs Relief with Respect to Challenges for Maps for Which Plaintiffs Have Not Established Standing.**

To challenge an agency decision under the APA, a plaintiff must establish it has standing to sue. Defenders, 504 U.S. at 561. Article III standing, at an irreducible minimum, requires a plaintiff to demonstrate that (1) the plaintiff has personally suffered "concrete and particularized" injury, which (2) can be "'fairly [] traced to the challenged action' and (3) 'is likely to be redressed by a favorable decision.'" Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982) (citations omitted). To be constitutionally

---

[10] Plaintiffs also completely fail to cite any binding legal requirement which applies to the form of maps. As the Supreme Court has explicitly held, " the only agency action that can be compelled under the APA is an action legally *required*. SUWA, 542 U.S. at 62-63.

cognizable, an injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Defenders, 504 U.S. at 560 (citations and internal quotation marks omitted).

Here, Plaintiffs ask the Court to enjoin the current MVU Maps, as well as "all future maps implementing the Travel Plan," see Plfs.' PI Br. at 17, without demonstrating that they have standing to challenge the maps.  Aside from a single declaration alleging harm from *potential* citation by Forest Service or state law enforcement officers for "accidentally end[ing] up in the wrong place in the GNF," see Plaintiffs' Decl. of Stacy Bragg at 3, Plaintiffs do not attempt to set forth "specific facts" by affidavits or otherwise, supporting any harm from use of the MVU Map.  See Nat'l Wildlife Fed'n, 497 U.S. at 884-85.  Specifically, Plaintiffs do not allege that they have been cited for violations of the designations shown on any of the MVU Maps.  Plaintiffs also seek to enjoin motorized maps that have yet to be produced, but do not demonstrate a particularized harm that utilizing those potential maps would cause to them.[1]  This Court should decline to enjoin the utilization of maps to which Plaintiffs cannot trace a concrete and particularized injury.

---

[1] Plaintiffs' requested injunction also potentially affords Plaintiffs relief from agency actions that are not ripe for judicial review.  Plaintiffs ask this Court to enjoin the Forest Service from implementing the "Travel Plan utilizing a Winter Motorized Use Map/Over Snow Vehicle Use Map of the same type and format as the Motor Vehicle Use Map."  Plfs.' PI Br. at 16.  Plaintiffs note that these subsequent maps "will be published at an undetermined point in the future," id. at 5, but assert that it is "likely that format of all future recreation maps nation-wide will be of the same kind and quality as the Motor Vehicle Use Map."  Id. at 5-6.  Plaintiffs' claim that "[t]his proliferation of maps . . . will fragment and confuse the public," id. at 17, is speculative and is not ripe for judicial review.  See Texas v. United States, 523 U.S. 296, 300 (1998) (holding that a claim is not ripe when it rests "upon contingent future events that may not occur as anticipated, or indeed, may not occur at all." quoting Thomas v. Union Carbide Agric. Prod., Inc., 473 U.S. 568, 580-81 (1985)).

**III.    Plaintiffs Have Neither Shown That They Are Likely to Succeed on the Merits, Nor That Their Claims Raise Serious Questions**.

   **A.    The Forest Service Complied With Necessary Conditions to Begin Implementing the Travel Plan.**

Implementation of the Travel Plan is an ongoing process, and will be done in several phases. Defendants' Exhibit 1.  Immediate implementation consists of the release of MVU Maps pursuant to 36 C.F.R. § 212.56 for motorized vehicle use, and issuance of special orders and maps implementing travel use restrictions for aircraft, bicycles and recreational livestock.  36 C.F.R. §§ 212.51(a), 261.13, 261.55(c), 261.588(y), 261.58(aa); see also Schlenker Decl. at ¶2.   The subsequent phases of implementation will occur as new routes identified in the Travel Plan are constructed and existing routes improved to allow for specified uses.  Defendants' Exhibit 1 at 2. The Forest Service has begun implementation of the Travel Plan in accordance with the requirements under the Travel Plan ROD and pursuant to 36 C.F.R. § 212.51.[12]  See Special Orders (Attached as Defendants' Exhibit 3); see also Plaintiffs' Exhibits 5-7 (MVU Maps). Despite the Agency's demonstrated compliance with the implementation provisions of the Travel Plan ROD, Plaintiffs claim that the "Court should enjoin the GNF from implementing the Travel Plan with the Motor Vehicle Use Maps because the GNF has failed to perform necessary conditions of the implementation process."  Plfs.' PI Br. at 9.

First, Plaintiffs point to the March 19, 2007 Appeals Recommending Officer ("ARO") Letter from Ranotta McNair, and allege that the Forest Service failed to follow the ARO's guidance in implementing the Travel Plan.  Plfs.' PI Br. at 9 n.25-26.  Plaintiffs mistake the purpose of the ARO

---

[12] The ROD notes that implementation of the Travel Plan also includes release of an Over-Snow Vehicle Use Map.  This Map is scheduled to be released on December 15, 2007. Schlenker Decl. ¶4B

letter in the administrative appeals process.  The ARO's report is not a binding, legal obligation on

the Forest Service.  Under 36 C.F.R. § 215.19(b), the ARO "reviews the appeal(s)" and then makes

a "written recommendation to the Appeal Deciding Officer."  The ARO's  recommendations are

considered by the Appeal Deciding Officer ("ADO") in making a final determination of the appeal.

The ADO's final determination may differ from the ARO's recommendations.  See 36 C.F.R. §

215.8(b)(3)(ii).  In this case, the ARO submitted a letter to the ADO highlighting several issues that

may need additional clarification by the Forest Service.  See Plaintiffs' Exhibit 13.  The ADO

subsequently prepared her own letter to the Forest Service, in which she wholly recited the items

raised by the ARO and asked the Forest Service to provide clarification.  See generally ADO Letter

(Attached as Defendants' Exhibit 4).  The Forest Service followed up on the ADO's questions and

prepared a response letter that was published on its website and sent to all parties who submitted an

appeal in connection with the Travel Plan.  See Forest Service's Response to ADO Letter (Attached

as Defendants' Exhibit 5).   Therefore, the Forest Service fully answered any specific inquiries the

ARO raised in her letter to the ADO, including clarification regarding notification to adjacent land

owners and clarification regarding motor vehicle use in the Cabin Creek Wildlife Recreation

Management Area ("CCWRMA").[13]  See generally Defendants' Exhibit 5.

---

[13] Contrary to Plaintiffs' assertions, neither the ARO letter nor the ADO letter instructed the
Forest Service to "demonstrate it has fully informed adjacent landowners" of policy changes
*with regard to motor vehicle use restrictions*.  Plfs.' PI Br. at 9.  The objective of informing
adjacent landowners applied to forest-wide goals of obtaining the necessary rights to provide
visitors with legal access to the GNF.  Defendants' Exhibit 2 at 1-8.  The instruction was not
limited to the implementation of the motorized vehicle use restrictions and is therefore irrelevant
to gauging the sufficiency of implementing those restrictions.  Additionally, Plaintiffs allege that
the Forest Service failed to clarify motor vehicle use in the CCWRMA, as recommended by the
ARO.  Plfs.' PI Br. at 9.  In fact, the Forest Service addressed that very issue in their response
letter to the ADO on June 18, 2007. See Defendants' Exhibit 5.

Plaintiffs also allege that 36 C.F.R. § 212.53 requires the Forest Service to coordinate with State, local, and tribal governments in implementing the Travel Plan. Plfs.' PI Br. at 10 n.27. Nothing Plaintiffs point to are regulatory directions specific to implementation of the Travel Plan in the GNF.  In fact, the quote Plaintiffs recite from the Federal Register is a response to a comment and creates no regulatory direction to speak of.  See 70 Fed. Reg. 68,280 (Nov. 9, 2005) (to be codified at 36 C.F.R. pt. 212, 251, 261 and 295) (listing comments and responses regarding the implementation of rules for off-highway vehicle use in National Forests).  Regardless, the administrative record demonstrates that the Forest Service did coordinate with State, local, and tribal governments in the implementation of the Travel Plan through a series of letters, presentations, and meetings starting in November 2002, and continuing through December 2006.  See Selected Letters (Attached as Defendants' Exhibit 6).

Finally, Plaintiffs allege that the Forest Service had "committed" to issue a special order *and* a map in order to implement any of the Travel Plan restrictions.  See Plfs.' PI Br. at 10.  However, the provision Plaintiffs cite was not a "commitment" of any sort but rather intended to inform the public that the Travel Plan was not yet in effect and would be implemented upon the completion of additional tasks.  The Forest Service does issue orders pursuant to 36 C.F.R. pt. 261, subpt. B, to provide notice to the public about certain types of restrictions where no enforcement maps otherwise exist.[14]  However, because the publication of the MVU Map and Winter Map already provides the public with notice of restrictions on motorized use, Forest Service regulations do not require the additional step of issuing a special order in conjunction with the publication of those maps.  36

---

[14]   For instance, the Forest Service issued special orders along with use maps for mountain bikes, stock and aircraft.  See Defendants' Exhibit 3 (Special Orders).

C.F.R. §§ 251.56; 261.13; 69 Fed. Reg. 42,389 (2004); 70 Fed. Reg. 68,270, 68,278 (2005); <u>see also</u>

Schlenker Decl. at ¶2.  Therefore, contrary to Plaintiffs' assertions, the Agency did not, and would

not, commit to the unnecessary step of issuing special orders in conjunction with the publication of

the MVU maps.

> **B.      The Forest Service Complied With National Protocol in Producing the Motor Vehicle Use Map, and the Alleged Map Errors are Inconsequential**.

Plaintiffs allege that the Travel Plan map should be enjoined because the Forest Service

failed to follow the ARO's guidance and that it produced maps that are flawed and will result in

inadvertent violations and people getting lost.  Plfs.' PI Br. at 10-13.   As noted above, the ARO

letter was fully addressed by the Forest Service and is otherwise intended only for guidance rather

than constituting a directive to the Forest Supervisor.   Furthermore, Plaintiffs cite no statute,

regulation or other authority requiring the Forest Service to produce "better maps" and "better

signing."   In fact, Plaintiffs acknowledge in their brief that the MVU Maps were produced in

response to new national map protocols established in 2005.  Plfs.' PI Br. at 5-6.  These national

map protocols are not the subject of a challenge in the pending litigation.  In contrast to the national

protocols established and adhered to by the Forest Service in this case, Plaintiffs' request for an

injunction requiring "better maps" and "better signing" is so imprecise and broad that it will

necessarily require this Court to inject itself as a manager of the Forest Service's future map

protocols and production.   Given that the purpose of these maps is limited and that the public

continues to have access to other sources of information such as a Forest Visitor Use map, access

to Forest Service personnel to answer questions and various visual cues on the trails themselves,

there is no basis to substitute the judgment of the Court for that of the Forest Service regarding the

adequacy of the maps in question.

Plaintiffs' allegations of errors and discrepancies between the final decision map and the MVU Map are also without merit. Plfs.' PI Br. at 11-13. These alleged "discrepancies" are inconsequential and otherwise irrelevant to their claim of harm, especially when considered in the context that the maps depict 1.8 million acres of forest and over 2,000 miles of roads and trails.[15] First, it should be noted that discrepancies between the final decision map and the MVU maps are expected because implementation of the Travel Plan is designed to occur over time. As a result, the current MVU Maps reflect what the conditions are now versus what they will look like when the Travel Plan is fully implemented in the future. See Plaintiffs' Exhibit 1. Second, these discrepancies will not lead to improper citations of trail users because, as the official regulatory tool, visitors and enforcement personnel alike will be using the same MVU Map. See Plaintiffs' Exhibit 1 at 4.

In sum, Plaintiffs have failed to raise any serious questions regarding the implementation of the Travel Plan or the production and use of the MVU Maps.

### IV.    The Balance of Harms and the Public Interest Weigh in Favor of Denying Plaintiffs' Request for a Preliminary Injunction.

Plaintiffs do not provide any evidence that the harm from the threat of prosecution is sufficiently imminent to warrant a grant of injunctive relief, and potential prosecution is not a basis for granting injunctive relief. Caribbean Marine Service, 844 F.2d at 675 ("[B]ecause 'multiple contingencies' must occur before the alleged injury occurred, the threat . . . was only potential" and not sufficient to support an injunction). In fact, a plaintiff must not merely allege harm, but must *demonstrate* immediate threatened injury and irreparable injury. See Los Angeles Mem'l Coliseum

---

[15] See attached Schlenker Declaration clarifying the alleged discrepancies and errors and explaining the dimensions of the area the map covers. Schlenker Decl. at ¶7, Appendix C.

Comm'n v. Nat'l Football League, 634 F.2d 1197, 1201, 1202-03 (9th Cir. 1980).  Here, potential prosecution of inadvertent violations is speculative at best.[16]

In addition, Plaintiffs have not demonstrated the presence of an immediate threatened injury; Plaintiffs have neither shown that anyone has been prosecuted under the Travel Plan since implementation, nor that prosecution is likely to result. The Forest Service, recognizing the potential for visitors to be unacquainted with the travel management changes, is emphasizing the use of information and education rather than prosecution during the "first several years."  See Defendants' Exhibit 2 at 2-47.  And even if Plaintiffs were cited for a motorized violation, it does not follow that this would constitute an irreparable injury because Plaintiffs have other legal remedies, including substantial due process rights in conjunction with any criminal proceeding related to the citation. See Casey v. F.T.C., 578 F.2d 793, 796 n.4 (9th Cir. 1978) ("[I]njunctive relief is usually denied until adequate legal remedies are exhausted").[17]

Finally, Plaintiffs allege hardship from the danger of getting lost due to reliance on the MVU Maps and the possibility of inadvertent trespass onto private property.  Plfs.' PI Br. at 14.  Plaintiffs fail to explain why these newly established maps, which the public is free to use along with existing visitors maps or any other item they may have previously used for navigation, will increase the

_____

[16]  Plaintiffs' PI Motion also alleges ruination of the 2007 big game rifle season and a threat of State prosecution due to possible violations of Montana Fish, Wildlife, & Parks hunting regulations.  Plfs.' PI Br. at 14.  Plaintiffs provide no evidence to support this claim.  Nothing in the Travel Plan affects where and when the public can hunt. The challenged MVU Maps do not contain hunting regulations, nor is the Forest Service obligated to ensure that hunters comply with State hunting regulations. Furthermore, enjoining use of the MVU Maps does not reduce the threat that a hunter may be in an area closed to hunting, whether on a motor vehicle, on horseback, or on foot.

[17] See also Beal v. Mo. Pac. R.R. Corp., 312 U.S. 45, 49 (1941) (Courts will not ordinarily grant the extraordinary remedy of injunctive relief to prevent the enforcement and prosecution of criminal violations, even if the prosecution is imminent).

likelihood of people getting lost.  Furthermore, text in the MVU Maps expressly warns the user that

the maps are intended only to identify areas "designated for the motor vehicle" and for the "purpose

of enforcing the prohibition."  <u>See</u> Plaintiffs' Exhibit 5-7.  The individual Maps also notify visitors

that they "[do] not display . . . other facilities and attractions on the [GNF]" and directs visitors to

"[o]btain a forest visitor map for more complete information," and to "contact the [GNF] for

clarification."  <u>Id.</u>

In contrast to Plaintiffs' unsupported and conclusory claims of irreparable injury, the harm

that will occur to the public interest if the Forest Service is not allowed to move forward with this

implementation of the Travel Plan is tangible and significant.  An injunction would foreclose the

environmental and social benefits of the Travel Plan, a project that the public has been intimately

involved in developing by way of thousands of comments over the last several years.  <u>See</u>

Defendants' Exhibit 2 at 2-2, 2-3, 5-3.  Furthermore, enjoining use of the MVU Maps would prevent

implementation of a project that has the potential to enhance the forest experience for both

motorized and non-motorized users and potentially reduce user conflict.[18]  <u>See</u> Plaintiffs' Exhibit

14 (Travel Plan ROD) at 7.  Thus, the balance of harms and the public interest tips in favor of

Defendants.

<u>**CONCLUSION**</u>

Plaintiffs have failed to meet their burden of proof on any of the elements required for them

to obtain preliminary injunctive relief.  Therefore, Federal Defendants respectfully request that the

Court deny Plaintiffs' PI Motion.

---

[18]  For instance, if the injunction is granted and the Forest Service is prevented from enforcing
motorized use restrictions in areas where motorized use is currently restricted, the recreational
experience of non-motorized users who enjoy the quiet solitude and hunting advantages of these
less noisy areas will be adversely affected.

Date: October 29, 2007                        Respectfully submitted,

                                              **RONALD J. TENPAS**
                                              Acting Assistant Attorney General
                                              Environment and Natural Resources Division

                                                   /s/ Thomas S. Zia
                                              _____
                                              **THOMAS S. ZIA**
                                              thomas.zia@usdoj.gov
                                              **KATHRYN E. BENZ**
                                              kathryn.benz@usdoj.gov
                                              Trial Attorneys
                                              United States Department of Justice
                                              Environment and Natural Resources Division
                                              P.O. Box 663
                                              Washington, D.C. 20044-0663
                                              Telephone:  (202) 305-0430(Zia) / 305-0245(Benz)
                                              Facsimile:  (202) 305-0506

                                              **WILLIAM W. MERCER**
                                              United States Attorney
                                              **LEIF JOHNSON**
                                              Chief, Civil Division
                                              leif.johnson@usdoj.gov
                                              2929 3rd Avenue N.
                                              Billings, MT 59102
                                              Telephone:  (406) 657-6101
                                              *Attorneys for Federal Defendants*

**Of Counsel**: Alan Campbell, Office of General Counsel, Montana

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 29, 2007, a copy of the foregoing document was served on the following persons by the following means:

1- 10   CM/ECF
_____   Hand Delivery
  11   U.S. Mail (on October 30, 2007)
_____   Overnight Delivery Service
_____   Fax
____   E-Mail

| | | | |
|---|---|---|---|
| 1. | Clerk, U.S. District Court | 8. | Carl J. Withroe<br>cjw@msbtlaw.com |
| 2. | Douglas L. Honnold<br>dhonnold@earthjustice.org | 9. | Paul A. Turcke<br>pat@msbtlaw.com |
| 3. | Robert Cameron<br>rtc@gsjw.com | 10. | Cory J. Swanson<br>swanriver@usa.net |
| 4. | Timothy J. Preso<br>tpreso@earthjustice.org | 11. | The Wilderness Society<br>503 W. Mendenhall<br>Bozeman, MT 59715 |
| 5. | Jenny K. Harbine<br>jharbine@earthjustice.org | | |
| 6. | Leif M. Johnson<br>leif.johnson@usdoj.gov | | |
| 7. | William M. Mercer<br>bill.mercer@usdoj.gov | | |

   /s/ Thomas S. Zia
THOMAS S. ZIA, Trial Attorney
United States Department of Justice
Ben Franklin Station, P.O. Box 663
Washington, D.C. 20044-0663
Phone:  (202) 305-0430 / Fax: (202) 305-0506