**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

_____

MONTANA WILDERNESS ASSOCIATION
and GREATER YELLOWSTONE COALITION,
and THE WILDERNESS SOCIETY,

                                          CV 07-39-M-DWM
                                          (consolidated)

          Plaintiffs,

          vs.                             ORDER & FINDINGS
                                          AND RECOMMENDATION
                                          OF UNITED STATES
                                          MAGISTRATE JUDGE

KATHLEEN McALLISTER, Regional
Forester for Region 1, REBECCA
HEATH, Supervisor of the Gallatin
National Forest, and UNITED STATES FOREST
SERVICE,

          Defendants, Cross-Defendants,

and

TREASURE STATE ALLIANCE, MONTANA
TRAIL VEHICLE RIDERS ASSOCIATION,
MONTANA SNOWMOBILE ASSOCIATION,
UNITED FOUR-WHEEL-DRIVE ASSOCIATIONS,
and BLUE RIBBON COALITION, INC.,

          Intervenor Defendants, Cross-Claimants

          _____

CITIZENS FOR BALANCED USE,
GALLATIN VALLEY SNOWMOBILE
ASSOCIATION, KENNETH ZAHN,
and BIG SKY SNOWRIDERS,                    CV 07-59-BLG-DWM
                                          (consolidated)

          Plaintiffs,

          vs.

REBECCA HEATH, Gallatin National
Forest Supervisor, REGIONAL FORESTER
TOM TIDWELL, Region 1, ABIGAIL
KIMBALL, Chief of the United States
Forest Service,

          Defendants,

          _____

-1-

This matter comes before the Court on several pending motions.  Following a hearing, and the Court's review of the briefs and other materials of record,

## ORDER

_____**IT IS ORDERED** that Citizens for Balanced Use et al.'s motion for permission to file a second amended complaint is **GRANTED.**

## RECOMMENDATION

**IT IS RECOMMENDED** that:

(1) Citizens for Balanced Use et al.'s Motion for Preliminary Injunction be **DENIED;**

(2) Montana Wilderness Association et al.'s Motion to Intervene be **GRANTED** to the extent they seek permissive intervention, and **DENIED** to the extent they seek intervention as of right.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DONE and DATED this 26th day of November, 2007.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

**ANALYSIS**

## I.  Introduction

This now-consolidated litigation began in March 2007, when
Plaintiffs Montana Wilderness Association, Greater Yellowstone
Coalition, and The Wilderness Society (collectively "MWA") filed
a complaint for declaratory and injunctive relief pursuant to the
Administrative Procedures Act ("APA"), §§ 551 et seq.,
challenging the Record of Decision ("ROD") for the Gallatin
National Forest's Travel Management Plan ("Travel Plan") dated
October 30, 2006, and the underlying Final Environmental Impact
Statement ("FEIS").  MWA claims that Defendants Kathleen
McAllister, Rebecca Heath, and the United States Forest Service
(collectively "Forest Service") violated the Montana Wilderness
Study Act of 1977 ("MWSA") by approving a Travel Plan and ROD
allowing for an increase in motorized and mechanized activities
in the Hyalite-Porcupine-Buffalo Horn Wilderness Study Area
("WSA"), located within the Gallatin National Forest.  MWA also
alleges that the Forest Service's FEIS violates the National
Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., in a
number of ways.

In April 2007, approximately three weeks after MWA initiated
its action, several recreational groups mounted a similar
challenge, albeit from the opposite end of the ideological
spectrum.  In their complaint for declaratory relief pursuant to

the APA, Citizens for Balanced Use, Gallatin Valley Snowmobile Association, Kenneth Zahn and Big Sky Snowriders (collectively "CBU") allege that the Travel Plan is overly restrictive and set forth several claims under NEPA and the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600 et seq.  CBU also alleges in its sixth claim for relief that the Forest Service violated the MWSA by closing the wilderness study area to motorized recreation.

In early May 2007, Treasure State Alliance and a number of other recreational groups moved to intervene as defendants in MWA's action.[1]  The Court allowed Treasure State to intervene on a permissive basis, and Treasure State has since cross-claimed against the Forest Service.  As do the CBU recreational plaintiffs, Treasure State alleges that the Travel Plan unduly restricts motorized and mechanized travel in the WSA in violation of federal and state law.

Faced with defending separate actions challenging the same Travel Plan, the Forest Service moved to consolidate the two cases pursuant to Fed. R. Civ. P. 42(a).  The Court granted the Forest Service's motion and consolidated the two actions, noting that both cases "address legal issues concerning the 2006

---

[1] In addition to Treasure State Alliance, these intervenors include Montana Trail Vehicle Riders Association, Montana Snowmobile Association, United Four-Wheel-Drive Associations, Inc., and the Blueribbon Coalition, Inc. (collectively "Treasure State").

Gallatin National Forest Travel Plan Record of Decision and Final Environmental Impact Statement."  Order (July 31, 2007).

MWA now seeks leave to intervene as a defendant in these consolidated actions so that it may address the issues raised by Treasure State in its cross-claim and by CBU in its complaint. In addition, CBU has moved for a preliminary injunction barring the Forest Service from implementing the Travel Plan by way of the Motorized Vehicle Use Maps it released on October 8, 2007, precluding it from publishing similar maps in the future, and directing it to publish more detailed maps.  Finally, CBU has moved for leave to file a second amended complaint in response to arguments raised by the Forest Service in opposition to its request for a preliminary injunction.

## II.  MWA's Motion to Intervene

MWA moves to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2) in Treasure State's and CBU's claims arising under the MWSA.  In the alternative, MWA seeks to intervene permissively in those claims pursuant to Fed. R. Civ. P. 24(b). MWA also moves for permissive intervention as to CBU's claims arising under NEPA.[2]  Treasure State and CBU do not oppose any portion of MWA's motion to intervene.[3]  While the Forest Service

---

[2] Treasure State does not assert any cross-claims under NEPA.  Answer & Cross-Claim (July 24, 2007).

[3] Recreational Plaintiffs' Notice of No Opposition (Sept. 28, 2007); MWA's Mot. to Intervene, 2 (Sept. 21, 2007).

likewise voices no objection to MWA's request for permissive
intervention, it argues that MWA is not entitled to intervene as
of right in the recreational groups' MWSA claims.

Rule 24 of the Federal Rules of Civil Procedure governs
third-party intervention as of right, as well as permissive
intervention.  The Ninth Circuit has established a four-part test
for determining whether an applicant may intervene as of right
under Rule 24(a):

> (1) the motion must be timely; (2) the applicant must have a
> "significantly protectable" interest relating to the
> property or transaction that is the subject of the action;
> (3) the applicant must be so situated that the disposition
> of the action may, as a practical matter, impair or impede
> the applicant's ability to protect that interest; and (4)
> the applicant's interest must not be adequately represented
> by the existing parties in the lawsuit.

*Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810,
817 (9th Cir. 2001).  Where, as here, a private party seeks to
intervene in an action to compel compliance with NEPA, the Ninth
Circuit has held that intervention as of right is not
appropriate.  *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094,
1108 (9th Cir. 2002).  In so holding, the Ninth Circuit focused
on the second of the four elements set forth above and explained
that "private parties do not have a 'significant protectable
interest' in NEPA compliance actions."  *Kootenai Tribe*, 313 F.3d
at 1108.  This is so because "NEPA requires action only by the
government" and "only the government can be liable under NEPA."
*Kootenai Tribe*, 313 F.3d at 1108 (*quoting Wetlands Action Network*

-6-

*v. United States Army Corps of Eng'rs*, 222 F.3d 1105, 1113-14
(9th Cir. 2000)).  Because a private party cannot violate or be
held liable under NEPA, the resulting rule is that "the federal
government is the only proper defendant in an action to compel
compliance with NEPA."  *Kootenai Tribe*, 313 F.3d at 1108 (*quoting*
*Wetlands Action Network v. United States Army Corps of Eng'rs*,
222 F.3d 1105, 1113-14 (9th Cir. 2000)).

While MWA agrees that it is not entitled to intervene as of
right in CBU's NEPA claims, and indeed does not seek to do so,
it maintains that the "rule limiting defensive intervention in
NEPA cases is not applicable to claims brought to enforce a
substantive statutory mandate, including those arising under the
Montana Wilderness Study Act."  MWA's Reply, 4 (Oct. 18, 2007).
According to MWA, the Forest Service is asking this Court to
unduly expand upon the rule reiterated in *Kootenai Tribe* and
effectively preclude defensive intervention as of right whenever
a private party seeks to compel government action.  MWA's Reply,
6.

MWA's arguments on this point notwithstanding, of foremost
significance to this Court is the fact that Chief Judge Donald W.
Molloy has already applied *Kootenai Tribe* to preclude Treasure
State from intervening as of right in this litigation.  In early
May 2007, Treasure State moved for permission to intervene as a
defendant and cross-claimant in MWA's action against the Forest

Service, which involves claims under NEPA and the MWSA.  Citing
*Kootenai Tribe*, Judge Molloy determined that Treasure State was
not entitled to intervene as of right in MWA's NEPA compliance
action.  Order, 3 (May 31, 2007) (noting that while Treasure
State contested the rationale of the *Kootenai* court decision,
that case represents "the law in the Ninth Circuit" and turning
then to the question of permissive intervention).  Although Judge
Molloy did not specifically address the arguments now raised by
MWA in an effort to distinguish *Kootenai Tribe* and secure
intervention as of right, the fact remains that he effectively
determined Treasure State was not entitled to intervene as of
right under circumstances virtually identical to those involved
in MWA's pending motion.  To allow MWA to do otherwise, and
intervene as of right as a defendant in CBU's action and in
Treasure State's cross-claims, would be to contravene Judge
Molloy's order.  In light of Judge Molloy's prior order in this
case, MWA's motion to intervene as of right in CBU's MWSA claim,
and in Treasure State's cross-claims, should be denied.

    While Judge Molloy did not allow Treasure State to intervene
as of right as a defendant in MWA's lawsuit against the Forest
Service, he found in the alternative that  Treasure State had
satisfied the criteria for permissive intervention and allowed it
to intervene on that basis.  MWA has likewise moved in the
alternative for permissive intervention pursuant to Fed. R. Civ.

P. 24(b), which gives the court discretion to allow permissive intervention if certain criteria are met. Upon a timely application, a court may allow permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common" and intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b).

The Forest Service does not take a position on MWA's request to intervene on a permissive basis, and the materials of record indicate that MWA has satisfied the criteria for permissive intervention. Its motion to intervene was timely, filed some five months after CBU initiated its action but before any substantive motions or rulings. MWA filed its motion to intervene in Treasure State's cross-claims just two months after those cross-claims were first asserted in July 2007. There is no indication that allowing MWA to intervene on a permissive basis would prejudice any of the many parties to this comprehensive litigation, which is perhaps best evidenced by the fact that none of the parties opposes MWA's request for permissive intervention. Furthermore, MWA has established by way of the various affidavits submitted in support of its application that it has a legitimate interest in the outcome of this litigation.

For the reasons set forth above, MWA's motion to intervene as of right as a defendant in CBU's and Treasure State's claims

under the MWSA should be denied.  MWA's alternative request to
permissively intervene in those claims, as well as its
application to intervene on a permissive basis as to CBU's NEPA
claims, should be granted.

## III. CBU's Motion for Preliminary Injunction

CBU has filed a motion for preliminary injunction, asking
that this Court bar the Forest Service from implementing the
Travel Plan by way of the Motorized Vehicle Use Maps it released
on October 8, 2007, preclude it from publishing similar maps in
the future, and direct it to publish more detailed maps.

### 1.   Factual background

Implementation of the Travel Plan published by the Forest
Service in December 2006 will be a lengthy process, occurring
over a period of ten to fifteen years and involving three phases.
Defs.' Exh. 1.  During the first of these three phases, the
Forest Service is to "execut[e] Forest orders that implement
permanent and short-term closures, creat[e] user information such
as maps and user guides that show opportunities and prohibitions,
and install[] travel management signing."  Pls.' Exh. 14, (Travel
Plan ROD), at 140.  The Travel Plan's implementation strategy
provides, in part, that "production of maps or user guides" will
likewise "be implemented in two stages," the first of which
involves "the production of an inexpensive interim map showing
non-motorized prohibitions described by the Forest Orders and

motorized opportunities on the Motor Vehicle Use Map and Over-snow Motor Vehicle Use Map." Defs.' Exh. 1, p. 3. Stage two would then "follow with a new Forest visitor map and/or user guides printed on durable media which will be available for a fee as the Visitor map is currently." Defs.' Exh. 1, p. 3.

Pursuant to this implementation process, the Forest Service issued the three Motorized Vehicle Use Maps ("MVU Maps") that are the subject of CBU's pending motion for preliminary injunctive relief on October 8, 2007.[4] These maps are particularly significant to the recreational plaintiffs because individual forest users are responsible for informing themselves as to "route status," and knowing which roads and trails are open for what use and when. Pls.' Exh. 1, p. 1.

While the MVU Map designations are legally enforceable,[5] the Forest Service "intends to emphasize information and education for users" during the first few seasons. Pls.' Exh. 1, p. 3. Whether "to provide warnings or issue violation notices" during this period will be left to the discretion of law enforcement. Pls.' Exh. 1, p. 3. According to the Forest Service, "[t]he typical bond for a summer motorized vehicle violation in the

---

[4] The first of these maps covers the Absaroka-Beartooth Mountain Range, the second map covers the Bridgers/Crazies Mountain Range, and the third map covers the Gallatin-Madison Mountain Range. Pls.' Exhs. 5-7.

[5] 36 C.F.R. § 261.13.

state of Montana is $200.00." Pls.' Exh. 1, p. 3. By federal regulation, however, a forest user may face a maximum penalty of up to a $500 fine or six months in jail.[6] 36 C.F.R. § 261.1b. *See also* 16 U.S.C. § 551.

According to CBU, this places forest users in an untenable position because the MVU Maps upon which they must rely to assess "route status" are deficient. For example, CBU maintains that "[t]he maps are largely devoid of landmarks," do not depict trailheads, fail to clearly identify state highways, and 'have different scales in their legends." CBU's Br. in Support, 4. CBU also contends that the maps "falsely depict easements that do not exist across private land, and do not adhere to the MVU Map National Protocol." CBU's Reply, 7. As CBU notes, many of the routes identified on the MVU Maps have seasonal restrictions, with some closing to motorized use in September or October, and many closing seasonally on the first day of December. Pls.' Exhs. 5-7. CBU expresses concern because the maps will thus govern recreation in the GNF through the duration of rifle big

---

[6] There is some confusion in the record as to whether the maximum fine for a violation of 36 C.F.R. 261.13 is $500 or $5,000. Citing 18 U.S.C. § 3571(e) as authority, the MVU Maps indicate that the maximum fine is $5,000. The Travel Plan, however, cites 16 U.S.C. § 551 for proposition that $500 is the maximum fine. Defs.' Resp. to Mot. for Prelim. Injunction, Exh. 3, p. 7 (Oct. 29, 2007). The Travel Plan is correct.

game hunting season.[7]

CBU also claims that recreational users will be irreparably harmed as a result because they face the danger of getting lost or violating seasonal restrictions and being prosecuted as a result.  Pl.'s Memo. in Support, 14.  Citing such concerns, CBU seeks preliminary injunctive relief barring the Forest Service from implementing the Travel Plan by way of these MVU Maps. CBU's Mot. for Prelim. Injunction, 2 (Oct. 16, 2007).  CBU also requests that this Court "require GNF to publish a more detailed and quality map correcting the deficiencies identified in these maps and matching the quality of the maps previously published by the GNF for forest visitor use."  CBU's Mot., 2.

CBU also notes that the Forest Service implementation plans call for additional user maps, including the Over-Snow Vehicle Map, also known as the Winter Use Map, as well as maps "showing motorized, mountain bike, and stock opportunities and restrictions."  Anticipating that these maps will likely resemble the MVU Maps already issued, CBU asks the "Court to enjoin [the] GNF from publishing, and implementing the Travel Plan therewith, the Over Snow Vehicle Use Map or Winter Use Map and subsequent

---

[7] CBU's concern will be short-lived, however, as the season will close on November 25, 2007, just a few days from now.  As discussed below, CBU's motion is largely moot in light of the time frames involved and the nature of the relief sought.

maps pertaining to the GNF Travel Plan so long as they are of the same format, detail and quality as the published" MVU Maps. CBU"s Mot., 2.

    2.  <u>Legal standards</u>

    As the United States Supreme Court has recognized, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, *Federal Practice & Procedure* § 2948, pp. 129-30).

    To obtain preliminary injunctive relief, the moving party must establish "either (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) serious questions going to the merits and a balance of hardships strongly favoring the plaintiffs." *Paramount Land Co. LP v. California Pistachio Com'n*, 491 F.3d 1003, 1008 (9th Cir. 2007). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Paramount Land Co.*, 491 F.3d at 1008 (*quoting Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir. 2000). As such, they "are not separate tests but rather 'outer reaches of a single continuum.'" *Paramount Land Co.*, 491 F.3d at 1008

-14-

(*quoting Los Angeles Coliseum Comm'n v. Nat'l Football League*,
634 F.2d 1197, 1201 (9th Cir. 1980).

    3.  <u>Propriety of preliminary injunctive relief</u>

    The Forest Service argues that CBU's motion for preliminary
injunctive relief should be denied for a number of reasons.
First, the Forest Service maintains that CBU's motion is
procedurally flawed, and should be denied on that basis.
Second, the Forest Service contends that CBU has not satisfied
the APA's jurisdictional requirements because it lacks standing
and has failed to identify a reviewable final agency action.
Third the Forest Service takes the position that CBU has not
shown a likelihood of success on the merits or the presence of
serious questions going to the merits.  Finally, the Forest
Service argues that CBU has not established the possibility of
irreparable harm, that the balance of hardships tips strongly in
its favor, or that the public interest weighs in favor of
granting an injunction.

    a.  *Procedural flaws*

    As a threshold matter, the Forest Service takes the
position that CBU is improperly attempting to obtain preliminary
injunctive relief on claims not set forth in its complaint.  In
its motion, CBU clearly seeks to enjoin the Forest Service from
"implementing the Travel Plan" by using the MVU Maps or any
other maps "of the same format, detail, and quality."  CBU's

-15-

Mot., 2.  By CBU's own admission, however, "[n]one of the issues raised in the pleadings challenged the sufficiency of the maps to be utilized for Travel Plan implementation."  CBU's Memo. in Support, 7.  The Forest Service maintains that CBU's request for preliminary injunctive relief thus constitutes an improper "attempt to adjudicate the merits" of claims not set forth in the complaint.  The Forest Service is correct.

Under the well-established sliding scale test for preliminary injunctive relief, the moving party must still demonstrate either "a fair chance of success on the merits" or that its claims raise "questions serious enough to require litigation."  *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 753 (9th Cir. 1982).  While the moving party's burden in this regard may be diminished somewhat if it can demonstrate great hardship, it must at an "irreducible minimum" demonstrate that there are "questions serious enough to require litigation." *Sports Form*, 686 F.2d at 753.

Even assuming CBU could establish "questions serious enough to require litigation," this Court would not have the opportunity to answer those question because CBU has not yet asserted a claim challenging the Forest Service's implementation of the Travel Plan by way of the MVU Maps.  As the Forest Service thus notes, any preliminary injunction would in effect operate as a permanent injunction because the Court would not

-16-

have the opportunity to pass upon the merits of such a claim in this litigation.  Because CBU has not asserted a claim challenging the Forest Service's implementation of the Travel Plan using the maps at issue, it would be improper for this Court to issue a preliminary injunction precluding the Forest Service from doing so.  *See Stewart v. United States Immigration & Naturalization Serv.*, 762 F.2d 193, 198-99 (2nd Cir. 1985) (concluding there was no jurisdictional basis for issuing preliminary injunctive relief where the issues presented in the movant's request for preliminary injunction differed from those set forth in the complaint).

To resolve this problem, CBU has moved for permission to file a second amended complaint adding just such a claim.  Mot. for Leave to File Second Amended Compl.  (Nov. 9, 2007).  The proposed second amended complaint sets forth a thirteenth cause of action in which CBU indeed challenges the Forest Service's implementation of the Travel Plan by way of the MVU Maps and incorporates the allegations set forth in its request for preliminary injunctive relief.  Proposed Second Amended Complaint (Nov. 9, 2007).  Allowing CBU to file this proposed amended complaint would address the procedural problems raised by the Forest Service, and would place the merits of CBU's challenge to the implementation of the Travel Plan squarely before the Court in this litigation.

-17-

Under Federal Rule of Civil Procedure 15(a), leave to amend "shall be freely given when justice so required." Fed. R. Civ. P. 15(a). "In the absence of any apparent or declared reason - such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, etc. - the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). *See also Roth v. Garcia Marques*, 942 F.2d 617, 628 (9th Cir. 1991). There is no evidence that CBU has acted with undue delay, bad faith, or dilatory motive, and there is no indication that allowing CBU to amend its complaint for a second time would unduly prejudice the Forest Service.

At oral argument, the Forest Service nevertheless opposed CBU's motion on the basis that allowing CBU to file its second amended complaint would be an exercise in futility. *See e.g Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1159, 1160 (9th Cir. 1989). According to the Forest Service, it would be futile to allow CBU to amend its complaint to challenge implementation of the Travel Plan by way of the MVU Maps, because such enforcement documents do not constitute final agency action. While MWA aligns itself with the Forest Service in opposition to CBU request for preliminary injunction, it sided with CBU on

-18-

this point at oral argument, pointing to authority suggesting
that the MVU Maps may indeed constitute final agency action.
Whether the Forest Service would ultimately prevail on this
point, which is legitimately in dispute, is not for the Court to
decide at this time.  Allowing CBU to file its proposed second
amended complaint will address the procedural concerns raised by
the Forest Service and allow the Court to consider the propriety
of granting the preliminary injunctive relief at issue.

        b.  *Mootness and Ripeness*

    CBU seeks three forms of relief by way of its preliminary
injunction.  First, it asks the Court to enjoin the Forest
Service from implementing the Travel Plan with the MVU Maps
released on October 8, 2007.  Second it asks that the Court
require the Forest Service "to publish a more detailed and
quality map correcting the deficiencies" in the MVU Maps.  CBU's
Mot. 2.  Finally, CBU moves the Court to enjoin the Forest
Service from publishing additional maps "so long as they are of
the same format, detail and quality as the published" MVU Maps.
CBU's concerns, and the relief it requests, are either moot or
premature.

    With respect to the first category of preliminary
injunctive relief sought, CBU claims that forest users will be
irreparably harmed if they must rely on the allegedly deficient
MVU Maps because their big game rifle hunting season might be
ruined, they might get lost, they might be cited for

inadvertently violating route restrictions, or they might come
into conflict with private landowners.

As of the date of this recommendation, CBU's concerns
regarding the October 8, 2007, MVU Maps are virtually moot.  The
last of the route closures identified on the maps, as
acknowledged by CBU, are scheduled to occur within days, on
December 1, 2007.  At the hearing, the Forest Service indicated
that its implementation plans call for publishing new MVU Maps
before the new season opens again on May 16, 2008.  Because the
October 8, 2007, MVU Maps will be of no practical use to forest
users after December 1, 2007, CBU's request that the Court
enjoin the Forest Service from using them is all but moot.  If,
as CBU fears, the Forest Service fails to issue new MVU Maps
before the new seasons opens in May 2008 and continues the
October 8, 2007, MVU Maps in effect, CBU could seek preliminary
injunctive relief at that time.  But as the case stands now,
CBU's motion to enjoin the Forest Service from using the current
MVU Maps will be entirely moot by December 1, 2007, before Chief
Judge Molloy will even have a chance to pass upon the propriety
of this recommendation.  Any preliminary injunction precluding
the Forest Service from using the existing MVU Maps would thus
be hollow in effect.

As noted above, CBU also asks the Court to preclude the
Forest Service from publishing maps of similar quality in the
future, and order the Forest Service to publish better maps.

CBU's request is based on nothing more than its assumption that future maps will be similar in quality and content to the October 2007 MVU Maps.  Whether the Forest Service will indeed issue maps in the future without correcting inaccuracies, and whether CBU will be injured as a result, is pure speculation at this point.  For the Court to prematurely enjoin the Forest Service from publishing "similar" maps in the future and direct it to publish "better" maps, would be for it to enter what amounts to relief in the form of mandamus instructions.  This Court can only speculate as to whether any possible future injury to CBU would be redressed by a favorable decision on its request for injunctive relief.

In sum, those portions of CBU's request for injunctive relief that are not moot are, at best, premature.  Even assuming to the contrary, CBU's motion nevertheless fails on the merits for the reasons set forth below.

c. *Irreparable harm and the balance of hardships*

The Forest Service maintains that CBU has failed to demonstrate that the balance of hardships tips sharply in its favor, such that it faces the possibility of irreparable injury if injunctive relief is not granted.

Assuming for purposes of this discussion that CBU were able to demonstrate a strong likelihood of success on the merits, it would still have to "show the possibility of irreparable injury if preliminary injunctive relief is not granted, and that the

-21-

balance of hardships tips in its favor." *Earth Island Institute v U.S. Forest Service (Earth Island II)*, 442 F.3d 1147, 1177 (9th Cir. 2006).  While CBU would thus face the lesser burden of establishing the "possibility" of irreparable injury, as opposed to a "significant threat" of such injury, it has long been held in the Ninth Circuit that "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."[8] *Carribean Marine Servs. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).  *See also Goldie's Bookstore, Inc. v. Superior Court,* 739 F.2d 466, 472 (9th Cir. 1984).  Absent a showing of irreparable harm, the court need not address the likelihood of the movant's success on the merits.  *Oakland Tribune, Inc. v. Chronicle Publishing Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985).

CBU maintains that the possibility of irreparable harm exists because forest users who have difficulty reading the MVU Maps might inadvertently violate route restrictions, and face criminal prosecution as a result.  Such a possibility is far too remote to constitute irreparable harm warranting a preliminary injunction.  CBU cites no authority for the proposition that

---

[8] While *Carribean Marine* clearly predates *Earth Island II*, several district courts in the Ninth Circuit have continued to cite it for the proposition that speculative injury does not constitute irreparable harm even in the wake of the *Earth Island II* decision.  *See e.g. LaMotte v.* Moreno, 2007 WL 840862; *Consiglio v. Woodford*, 2007 WL 273916.

threat of possible prosecution for an offense that might never occur is sufficient to constitute irreparable harm. CBU is only able to speculate that some forest users may have difficulty reading the MVU Maps and violate route restrictions on motorized use as a result. Even further attenuated is CBU's assumption that those forest users would then be cited for doing so, particularly where the Forest Service has committed to a lengthy period of community education during this implementation period. Possible prosecution for an offense that might never take place is too speculative to constitute irreparable harm for purposes of preliminary injunctive relief.[9]

Even assuming some users were to be cited, those individuals would have other legal remedies in the context of defending against the ensuing criminal prosecution and enforcing their due process rights. *See* Casey *v. F.T.C.*, 578 F.2d 793, 796 n. 4 (9th Cir. 1978); *Corsican Productions v. Pitchess*, 338 F.2d 441, 443 (9th Cir. 1964); *Beal v. Mo. Pac. R.R. Corp.*, 312 U.S. 45, 49 (1941). An individual defendant would certainly be able to raise in defense the fact that he or she had relied on an allegedly erroneous map in any criminal proceedings. In this

---

[9] It is also worth noting that the typical bond for a motorized vehicle violation is a $200 fine. Pls.'s Exh. 1, p. 3. The possibility that any forest users would ever be assessed a significantly larger fine or sentenced to jail time is even more remote.

regard, the principal concern voiced by CBU is that 36 C.F.R. §
261.13, the enforcement regulation, is a "strict liability"
offense requiring no mens rea.  *See e.g. United States v. Kent*,
945 F.2d 1441, 1445-46 (9th Cir. 1991).  Contrary to CBU's
assertion, 36 C.F.R. § 261.13 is not a strict liability offense
in the true sense.  A condition precedent to enforcement of the
regulation is that the particular road, trail, or area be
identified on the applicable MVU Map.  This requirement
necessarily implies that the MVU Map accurately reflects the
proper designation.  *See Dunn v. United States*, 442 U.S. 100
(1929) (Supreme Court's "long established practice of resolving
questions concerning ambit of a criminal statute in favor of
lenity is rooted in fundamental principles of due process which
mandate that no individual be forced to speculate, at peril of
indictment, whether his conduct is prohibited")(citation
omitted).

CBU also argues that the hardships it faces include "a
ruination of the 2007 big game rifle season," as well as
"hassles and confusion from utilizing multiple maps with various
dates to augment this sub-standard product."  CBU's Br. in
Support, 14.  CBU fails to explain how these MVU Maps will in
any way irreparably "ruin" the 2007 big game rifle season, which
comes to close just days from now.  Nor does CBU explain how any
"hassle and confusion" felt by individuals using the MVU Maps
could constitute irreparable harm.  This Court fails to see how

the fact that someone might feel that using the MVU Maps presents a hassle, or is confusing, could in any way constitute irreparable harm sufficient to justify a preliminary injunction.

CBU also maintains that it faces the possibility of irreparable harm because of "the danger of getting lost from relying upon these maps." Even assuming the MVU Maps are confusing and difficult to use, CBU fails to explain how they would increase the likelihood of someone getting lost in the forest. The MVU Maps specifically caution users that they are intended only to identify areas "designated for the motor vehicle," and for the "purpose of enforcing the prohibition." Pls.' Exhs. 5-7. They are to be used in conjunction with existing visitor maps, which provide complete information for purposes of navigation. Pls.' Exh. 5-7.

Finally, CBU asserts that some of the maps incorrectly depict easements across private land where none exist, which could in turn cause people to inadvertently wander onto private land and come into conflict with landowners. As the Forest Service notes, however, CBU fails to explain how the MVU Maps "would create a 'conflict' between recreational users and [a] small number of landowners when the landowners in question are aware of the Forest Service's asserted claims of prescriptive easement...and the alleged dispute over land-ownership is between the landowners and the Forest Service," not CBU. Fed. Defs.' Sur-Reply, 10 (Nov. 16, 2007). The mere fact that a

-25-

landowner disputes the presence of a prescriptive easement on his or her property does not mean that the landowner is legally correct, and CBU points to no authority for its apparent proposition that the Forest Service should simply abandon use rights previously acquired by the public.

Because CBU points to nothing but speculative injury, and injury that is not irreparable in nature even if it were to occur, it has failed to establish the possibility that it will suffer irreparable harm if it does not obtain the preliminary injunctive relief it seeks.  The balance of hardships thus weighs in favor of the Forest Service, which would be precluded from implementing the Travel Plan developed over the last several years.

In addition to balancing the hardships imposed upon the parties, the court must "also consider the public interest." *Lands Council v. McNair*, 494 F.3d 771, 779 (9th Cir. 2007). While individual members of the public are no doubt divided on the question of how much motorized traffic should be permitted in the Gallatin National Forest, the public at large has an interest in preventing evironmental degradation and allowing the Forest Service to implement the Travel Plan, which was developed with extensive involvement from the public and by way of thousands of comments over a several year period.  The public interest thus tips in favor of the Forest Service.

**IV.  Conclusion**

-26-

As set forth above, MWA's motion to intervene should

granted to the extent that it seeks to permissively intervene as

a defendant in CBU's and Treasure State's claims under NEPA and

the MWSA, but denied to the extent it seeks to intervene as of

right in CBU's and Treasure State's claims under the MWSA.

While CBU's motion to filed a second amended complaint is

granted, its motion for a preliminary injunction should be

denied.[10]

---

[10] Because CBU's motion for a preliminary injunction should
be denied for the reasons set forth above, the Court need not
address the Forest Service's argument that CBU has not satisfied
the APA's remaining jurisdictional requirements and has not shown
a likelihood of success on the merits or the presence of serious
questions going to the merits.